1

2

3

4

5

6

7

8

9               IN THE UNITED STATES DISTRICT COURT

10             FOR THE EASTERN DISTRICT OF CALIFORNIA

11  SHERRILL MORTON and WILLIAM        )
    MORTON,                            )    NO. CIV S-03-2602 GEB GGH
12                                     )
                        Plaintiffs,    )
13                                     )
         v.                            )    ORDER
14                                     )
    CENTERPULSE ORTHOPEDICS, INC.,     )
15                                     )
                        Defendant.     )
16  _____)

17          Defendant Centerpulse Orthopedics Inc. moves for summary

18  judgment on all of Plaintiffs' claims, contending that the claims are

19  preempted by 21 U.S.C. § 360k(a) (the Medical Devices and Cosmetics

20  Act), and that the claims are legally untenable under state law and

21  are not factually supported.  Plaintiffs oppose the motion.

22                              Background

23          In January 1999, after it was determined that Plaintiff

24  Sherrill Morton needed a knee replacement surgery, Ms. Morton's

25  doctor, Dr. Ronald Carn, implanted a Natural Knee System which was

26  manufactured by Defendant in Ms. Morton's right knee.  In July 2002,

27  Ms. Morton experienced an acute pain in her right knee, and in August

28  2002, Dr. Carn replaced three of the components of her Natural Knee

                                    1

1 System.  Upon examination, Dr. Carn determined that the polyethylene

2 portion of the patella component of the system ("Patella Component")

3 had broken.  Plaintiffs then initiated this action for strict product

4 liability based on manufacturing and design defects; general

5 negligence based on negligent design, manufacture, and provision of

6 warnings; breach of warranty; and loss of consortium.  (Pls.'

7 Complaint at 4-6; Pls.' Opp'n to Mot. for Summ. J. at 4.)

8      The Medical Device Amendments ("MDA") to the Food, Drug and

9 Cosmetic Act created three classes of medical devices based on the

10 degree of regulation needed to assure the safety and effectiveness of

11 the medical device.  21 U.S.C. § 360c(a)(1).  Class I devices present

12 no unreasonable risk of illness or injury and are subject only to

13 minimal regulation by "general controls."  Id. § 360c(a)(1)(A).  Class

14 II devices are potentially more harmful and are subject to certain

15 "special controls."  Id. § 360c(a)(1)(B).  Class III devices either

16 "present[] a potential unreasonable risk of illness or injury" or are

17 "purported or represented to be for a use in supporting or sustaining

18 human life or for a use which is of substantial importance in

19 preventing impairment of human health."  Id. § 360c(a)(1)(C).  In

20 order to introduce a Class III device to the market, manufacturers of

21 Class III devices must receive premarket approval ("PMA") from the

22 United States Food and Drug Administration ("FDA") by providing the

23 FDA with a "reasonable assurance" that the device is both safe and

24 effective.  Id. § 360e(d)(2).  "Manufacturers must submit detailed

25 information regarding the safety and efficacy of their devices, which

26 the FDA then reviews, spending an average of 1,200 hours on each

27 submission."  Medtronic, Inc. v. Lohr, 518 U.S. 470, 477 (1996).

28

1    The Natural Knee System Patella Component is a Class III

2    medical device.  (See Beeman Decl. at ¶ 4.)  Prior to its introduction

3    into the market, the FDA granted premarket approval of the Natural

4    Knee System's Patella Component that is at issue in this litigation.

5    (Def.'s Statement of Undisputed Facts ("SUF") ¶ 1.)[1]

6                              Standard

7    Summary judgment is proper where the pleadings, depositions,

8    answers to interrogatories, affidavits, and admissions on file show

9    that there is no genuine issue as to any material fact, and the moving

10   party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

11   56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In

12   considering a motion for summary judgment, the court must examine all

13   evidence in a light most favorable to the nonmovant, and draw all

14   reasonable inferences in that party's favor.  Matsushita Elec. Indus.

15   Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations

16   omitted).  The "purpose of summary judgment is to 'pierce the

17   pleadings and to assess the proof in order to see whether there is a

18   genuine need for trial.'"  Id. (quoting Advisory Committee Note to

19   1963 Amendment of Fed. Rule Civ. Proc. 56(e), 28 U.S.C. App., p.626).

20                             Discussion

21   Defendant argues that the MDA preempts Plaintiffs' claims.

22   Defendant contends that through the premarket approval process, the

23   FDA established device specific requirements for the Natural Knee

24   System, and Plaintiffs' claims based upon state law theories of

25

26   _____

27        [1]    This is not disputed.  Local Rule 56-260 obligates the
     parties to "cite the particular portions of any pleading, affidavit,
28   deposition, interrogatory answer, admission or other document relied
     upon to establish [a] fact" asserted to be undisputed or disputed.

                                    3

1  liability assert standards which are inconsistent with the FDA

2  requirements.  (Def.'s Mot. for Summ. J. at 9-24.)

3        The MDA has a preemption provision which provides:

4           [N]o State . . . may establish or continue in
            effect with respect to a device intended for human
5           use any requirement- (1) which is different from,
            or in addition to, any requirement applicable
6           under this chapter to the device, and (2) which
            relates to the safety or effectiveness of the
7           device or to any other matter included in a
            requirement applicable to the device under this
8           chapter.

9  21 U.S.C. § 360k(a).  There is a split in authority regarding whether

10 this provision preempts state tort claims in which damages are sought

11 for alleged defective "medical devices that have received PMA

12 approval."  Gilleon v. Medtronic USA, Inc., 2002 WL 31300694, at *4

13 (N.D. Cal. Aug. 28, 2002).  "The majority of circuits to have

14 addressed the issue have held that the PMA process results in

15 preemption, at least of common law claims contending that the approved

16 product design is defective or unreasonably dangerous or that allege

17 that the approved labeling or warnings are inadequate."  Id. (citing

18 Brooks v. Howmedica, Inc., 273 F.3d 785, 799 (8th Cir. 2001); Martin

19 v. Medtronic, 254 F.3d 573, 584 (5th Cir. 2001); Kemp v. Medtronic,

20 231 F.3d 216, 226-28 (6th Cir. 2000); Mitchell v. Collagen Corp., 126

21 F.3d 902, 911 (7th Cir. 1997); see also Steele v. Collagen Corp., 54

22 Cal. App. 4th 1476, 1487 (1997)).  "The Eleventh Circuit, however,

23 reached a contrary conclusion, in Goodlin v. Medtronic, 167 F.3d 1367

24 (11th Cir. 1999), finding that the common law tort claims are not

25 preempted by the MDA."  Gilleon, at *4.

26        "[T]he cases on both sides of the split are well-reasoned

27 and defensible."  Id.  "The substantive split among the circuits

28 reveals a methodological difference: the majority focuses on the rigor

1  of the PMA process and often restrictive post-approval conditions,

2  whereas the minority focus on congressional intent as expressed in the

3  statute." Webster v. Pacesetter, Inc., 171 F. Supp. 2d 1, 9 (D.D.C.

4  2001). "Thus, courts that look to the rigors of the PMA approval

5  process, the FDA's involvement in approving the design of the device,

6  the warnings to be given for the device, and the contents of labeling,

7  conclude that the PMA approval constitutes device specific federal

8  requirements which would be undermined if state common law claims

9  could be brought and which would impose different or additional

10  requirements." Gilleon, 2002 WL 31300694, at *4.

11          Although the Ninth Circuit has not decided whether the MDA

12  preempts state products liability lawsuits over medical devices that

13  have received PMA approval, the district court in Gilleon, after

14  considering Ninth Circuit authority on whether "state common law

15  claims can amount to 'requirements' which may be preempted under the

16  MDA," predicted that "the Ninth Circuit would agree with the majority

17  view and hold that PMA approval of a Class III device gives rise to

18  preemption of state law claims." Gilleon, 2002 WL 31300694, at *4, 5.

19          The rationale of Gilleon is persuasive and will be followed.

20  Therefore, in accordance with the majority view, the PMA approval of

21  the Natural Knee System Patella Component "results in preemption of

22  state common law claims, to the extent those claims seek to impose

23  requirements that are different or in addition to those required by

24  federal law." Id. But, Plaintiffs also allege that "there is a

25  genuine issue of material fact related to whether or not defendant

26  followed federal regulations and its PMA related [to] the design,

27  manufacturing, and labeling of the product which is the subject of

28  this lawsuit." (Pls.' Opp'n to Mot. for Summ. J. at 12.)

1    Ms. Morton alleges Defendant defectively manufactured the

2 Patella Component.  However, no genuine issue of material fact has

3 been raised as to whether Defendant complied with all FDA requirements

4 related to the manufacture of the Patella Component.  (SUF ¶¶ 3,4.)

5 Therefore, summary judgment is granted for Defendant on Ms. Morton's

6 defective manufacturing claims.

7    Ms. Morton also alleges a product liability claim based on

8 defective design of the Patella Component.  The FDA granted premarket

9 approval of the design of the device, but Defendant has not set forth

10 specific facts in its Statement of Undisputed Facts indicating that it

11 complied with the design which was approved by the FDA.  However, in

12 California, "the entire category of medical implants available only by

13 resort to the services of a physician are immune from design defect

14 strict liability." <u>Artiglio v. Superior Court</u>, 22 Cal. App. 4th 1388,

15 1396-97 (1994).  Since no genuine issue of material fact exists as to

16 whether the Patella Component is an implanted prescription medical

17 device that may only be sold to physicians, Defendant's motion for

18 summary judgment on Ms. Morton's strict liability claim for defective

19 design is granted.

20    Ms. Morton also alleges Defendant failed to adequately warn

21 her or her physician about the potential adverse effects of the

22 Patella Component.  However, Defendant included with the device a

23 package insert titled "Important Information for the Operating

24 Surgeon," which was specifically approved by the FDA, and which warned

25 that "the potential adverse effects of the Intermedics Natural Knee

26 System are similar to those occurring with any total knee replacement.

27 These effects are often attributable to factors listed under Warnings

28 and Precautions and commonly include: (1) Changing position of the

1 prosthesis with or without loosening of cement or clinical symptoms.

2 Bending and/or fracture of the components . . . ."  (SUF ¶¶ 8,9.)

3 Plaintiffs dispute paragraph 8, citing to a portion of Dr. Ronald M.

4 Carn's Declaration, but the cited portion says nothing about whether a

5 warning was given.  Plaintiffs also dispute paragraph 9, citing to

6 evidence that does not controvert Defendant's statement that this

7 information was given to Ms. Morton's physician.  Therefore, summary

8 judgment is granted for Defendant on Ms. Morton's claims for failure

9 to adequately warn.

10        Ms. Morton also claims Defendant breached both express and

11 implied warranties.  However, Ms. Morton admitted in her deposition

12 testimony that "neither Dr. Carn nor anybody else made any

13 representations or assurances about the outcome of the operation."

14 (Deposition of Sherrill Morton at 37, lines 8-11.) (See also SUF ¶

15 11.)  Plaintiffs dispute paragraph 11, citing to evidence which does

16 not controvert Defendant's factual showing that it made no warranties

17 to her.[2]  Accordingly, Defendant's summary judgment motion on Ms.

18 Morton's claim for breach of an express warranty is granted.

19        Defendant also asserts it did not breach an implied warranty

20 to Ms. Morton because Ms. Morton was never in privity of contract with

21 Defendant.  (SUF ¶ 12.)  See Fieldstone Co. v. Briggs Plumbing

22 Products, Inc., 54 Cal. App. 4th 357, 362 (1997) (citations omitted)

23 (stating that "Vertical privity is a prerequisite in California for

24 recovery on a theory of breach of the implied warranties of fitness

25

26        [2]    Plaintiffs cite to the declaration of Larry Beeman at Page
27 2, lines 10 and 11; the deposition of Sherrill Morton at page 30, line
   23 to page 31, line 4; and the deposition of William Morton at page
28 13, line 24 to page 14, line 15.  However, none of this evidence
   indicates that Defendant made any warranties to Ms. Morton.

1   and merchantability."). Plaintiffs dispute paragraph 12, citing to

2   evidence which does not controvert Defendant's factual showing that it

3   was never in privity with Ms. Morton.[3]  Therefore, Defendant is

4   granted summary judgment on Ms. Morton's claim for breach of an

5   implied warranty.

6          Defendant also seeks summary judgment on Ms. Morton's claim

7   that Defendant was negligent.  However, Defendant has not set forth

8   specific facts in its Statement of Undisputed Facts that it complied

9   with the FDA-approved design.  Since Defendant has not met its burden

10  of establishing that there is no genuine issue of material fact as to

11  this claim, Defendant's motion for summary judgment on Ms. Morton's

12  negligence claim is denied.

13         Finally, Plaintiff William Morton alleges loss of

14  consortium.  Since this claim is derivative, and Defendant has not

15  established that there is no genuine issue of material fact as to

16  Defendant's negligence, Defendant's motion for summary judgment on Mr.

17  Morton's loss of consortium claim based on Defendant's negligence is

18  denied.

19         IT IS SO ORDERED.

20  Dated:  May 10, 2005

21
                                   /s/ Garland E. Burrell, Jr.
22                                 GARLAND E. BURRELL, JR.
                                   United States District Judge
23

24

25

26
        [3]    Plaintiffs cite to the declaration of Larry Beeman at Page
27  7, lines 4 to 6, and page 2, lines 10 and 11; the deposition of
    Sherrill Morton at page 112, lines 4 to 8, and lines 16 to 25; and the
28  declaration of Dr. Ronald M. Carn.  However, none of this evidence
    indicates that Ms. Morton was ever in privity with Defendant.